**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MAYRA MORALES and BRAULIO MORALES, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. CIV-25-205-SLP |
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

**O R D E R**

Before the Court is the Motion for Summary Judgment of Defendant Allstate Fire and Casualty Insurance Company. [Doc. No. 32]. Plaintiff has responded to the Motion. *See* Pl.'s Resp. [Doc. No.'s 47 & 48].[1] And Defendant has filed a reply. [Doc. No. 53]. For the reasons that follow, Defendant's Motion is DENIED.

## I. Governing Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether summary judgment is proper, the court does not weigh the evidence, but rather determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018). If there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

way, the issue is "genuine." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "Material" issues of fact include those that, under the substantive law, are essential to the proper disposition of the claim. *Id.* The Court construes the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor. *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citing *Anderson*, 477 U.S. at 248).

## II. Undisputed Material Facts[2]

On or around June 8, 2021, the Plaintiffs and nonparty Jonny Randall were involved in a car accident. Plaintiff, Mayra Morales ("Ms. Morales"), was injured in the accident, and was examined by McClain County EMS at the site of the accident.[3] Ms. Morales began seeing a doctor for lower back pain within weeks of the collision. At the time of the accident, the Plaintiffs had an underinsured motorist ("UIM") policy with Allstate that provided coverage up to $100,000 per person.

On May 10, 2022, Plaintiffs' counsel provided a letter to Allstate informing it that Ms. Morales was making a claim under her UIM policy. Ms. Morales' medical records were attached to the letter. On June 3, 2022, the adjuster assigned to Plaintiffs' UIM claim, Melissa Meacham (the "adjuster"), informed Plaintiffs' counsel that Allstate determined Ms. Morales' UIM claim to be $9,641.86 after "[c]onsidering all submitted medical bills to be reasonable and the tort offset of $25,000." [Doc. No. 32] ¶ 11. On June 19, 2022,

---

[2] The Court includes facts that are material, supported by the summary judgment record, and not genuinely disputed. *See* Fed. R. Civ. P. 56(c).

[3] There is a dispute as to how significantly Ms. Morales was injured in the accident.

Plaintiffs' counsel provided additional information regarding Ms. Morales' medical bills, including her need for future treatment, and submitted a counteroffer of $45,000.00.

Subsequently, the adjuster began asking for additional information regarding Ms. Morales' future treatment, including requesting cost estimates. On August 31, 2022, Plaintiffs provided Allstate with a medical report from Ms. Morales' doctor at Oklahoma Injury Care, as well as two other medical professionals at the facility, addressing the medical necessity of future treatment and the associated costs. The medical professionals submitted a joint, signed statement that, in their opinion, "within a reasonable degree of medical certainty. . . Mayra Morales will require ongoing medical care as a direct result of the injuries sustained in the 06/08/21 motor vehicle collision." [Doc. No. 47-11] at 4. The medical professionals additionally stated that Ms. Morales' medical care could "easily exceed $100,000 over the next five years." *Id.* Within an hour and ten minutes, Allstate emailed Plaintiffs' counsel stating that despite the statement submitted by the medical professionals, "it has been 9 months since [Ms. Morales'] last appointment and she has had no additional care to date . . . [so] Allstate is able to value the UIM claim at $10,641.86 new money." [Doc. No. 32] at ¶ 18. On September 8, 2022, Allstate offered Plaintiffs $11,141.86 to resolve the UIM claim. *Id.* at ¶ 19.[4]

On July 18, 2023, Plaintiffs provided Allstate with record of an evaluation Ms. Morales underwent at the Oklahoma Spine Hospital ("OSH"). An orthopedic surgeon at OSH diagnosed Ms. Morales with an annular tear with disc bulging at L5-S1 and

---

[4] There is a dispute as to whether Allstate held a roundtable to discuss Plaintiffs' UIM claim.

recommended surgery. Plaintiffs then provided additional medical records in which the surgeon estimated Ms. Morales' procedure to cost $169.565.38. [Doc. No. 47-20]. Despite this new information, Allstate's position and offer of $11,141.86 remained the same. Following the receipt of the new information regarding Ms. Morales' future medical treatment, Allstate did not conduct an interview with Ms. Morales, did not conduct an independent medical examination of Ms. Morales, did not conduct a medical records review, and did not consult a medical professional regarding Ms. Morales' file. Allstate did use a "Colossus Assessment" to determine what Ms. Morales' claim is worth. *Id.* ¶¶ 24-26.[5] The Colossus Assessment allotted $0 for future medical bills. *Id.*

## III. <u>Analysis</u>

### A. Bad Faith

In Oklahoma, insurers "ha[ve] an 'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'" *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting *Christian v. Am. Home Assur. Co.*, 577 P.2d 899, 901 (Okla. 1977)). The insurer's "violation of this duty gives rise to an action in tort." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) (quoting *Christian*, 577 P.2d at 904). "No reasonable inference of bad faith arises from the insurer's withholding payment based on a legitimate dispute." *Id.* at 1440. "[I]f the court determines there is a legitimate dispute between the parties, it . . . considers whether the

[5] To develop a Colossus Assessment, an Allstate claim adjuster submits data related to the insureds' claim to a computer program. The computer program utilizes the data to determine what the insureds' claim is worth.

plaintiff offered specific additional evidence to demonstrate bad faith." *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019) (citing *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128–32 (10th Cir. 2012)). To establish a prima facie case of bad faith, a plaintiff must prove:

> 1) he was covered under the automobile liability insurance policy[6] . . . and that insurers were required to take reasonable actions in handling the . . . claim; 2) the actions of insurers were unreasonable under the circumstances; 3) insurers failed to deal fairly and act in good faith toward [the insured] in their handling of the . . . claim; and 4) the breach or violation of the duty of good faith and fair dealing was the direct cause of any damages sustained by insured.

*Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1128 (10th Cir. 2016) (alterations in original) (quoting *Badillo*, 121 P.3d at 1093).

Plaintiffs oppose summary judgement in Allstate's favor, arguing the insurer acted in bad faith by failing to perform a reasonable investigation into Ms. Morales' need for future medical treatment.

First, the Court finds that there is a legitimate dispute between the parties regarding the value of Ms. Morales' claim and the extent of her injuries. Although Allstate and Ms. Morales have access to the same set of medical records, the parties disagree about the nature and extent of her injuries and her future medical needs. The Court therefore cannot conclude as a matter of law that Allstate breached the duty of good faith by refusing to pay the full value of Ms. Morales' claim.

---

[6] The parties do not dispute that Plaintiff is covered under the policy.

But Plaintiffs have produced sufficient evidence of bad faith as to the adequacy of Allstate's investigation. *See Shotts*, 943 F.3d at 1317 ("[A]n insurer's failure to conduct a reasonable investigation may give rise to a bad faith claim." (citing cases)). Notably, Plaintiff's providers at Oklahoma Injury Care stated that "within a reasonable degree of medical certainty. . . Mayra Morales will require ongoing medical care as a direct result of the injuries sustained in the 06/08/21 motor vehicle collision;" estimating the treatment could "easily exceed $100,000 over the next five years." [Doc. No. 47-11] at 4. Ms. Morales provided this report to Allstate when the adjuster requested it, but Allstate refused to consider the cost of Ms. Morales' need for surgery in the future at any point during the claim evaluation process. And when Ms. Morales provided a diagnosis from a surgeon at Oklahoma Spine Hospital, who suggested surgery for Ms. Morales, Allstate refused to consider her need for surgery in the claim evaluation process. [Doc. No. 47-20]. Allstate did not conduct an interview with Ms. Morales, did not conduct an independent medical examination of Ms. Morales, did not conduct a medical records review, and did not consult a medical professional regarding Ms. Morales' file at any time during the claim review process, including after receiving the documentation regarding Ms. Morales' need for future medical treatment. Viewing the factual record in the light most favorable to the Plaintiffs, there is sufficient evidence in the record for a jury to conclude that Allstate's investigation was inadequate. Thus, Allstate is not entitled to summary judgment on its bad faith claim.

**B. Punitive Damages**

Finally, Allstate moves for summary judgment on the issue of punitive damages. Although "punitive damages do not automatically follow from proof of bad faith," *Hatfield v. Liberty Mut. Ins. Co.*, 98 F. App'x 789, 795 (10th Cir. 2004), they are recoverable under Oklahoma law if "the jury finds by clear and convincing evidence that" the defendant acted, at a minimum, with reckless disregard for the rights of others. Okla. Stat. tit. 23, § 9.1(B); *see also Badillo*, 121 P.3d at 1106. The standard for reckless disregard requires a showing that Allstate "was either aware, or did not care, that there was a substantial and unnecessary risk that its conduct would cause serious injury to Plaintiff." *See* Okla. Uniform Jury Instruction No. 22.5. "Whether that showing has been made remains an issue of law for the trial court in its role as gatekeeper to determine, upon a defendant's challenge . . . whether there is competent evidence upon which a reasonable jury could find reckless disregard, from which malice and evil intent may be inferred." *Robinson v. Sunshine Homes, Inc.*, 291 P.3d 628, 638 (Okla. Civ. App. 2010) (citing *Badillo*, 121 P.3d at 1107).

Here, disputed issues of material fact exist as to whether Allstate conducted its investigation in bad faith. After viewing the evidence and drawing all reasonable inferences in Plaintiff's favor, the Court finds at this stage in the litigation that a genuine dispute exists as to whether Progressive's conduct could give rise to a finding of reckless disregard. Accordingly, Allstate is not entitled to summary judgment on the issue of punitive damages.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 32] is DENIED.

IT IS SO ORDERED this 26th day of October, 2026.

SCOTT L. PALK
CHIEF UNITED STATES DISTRICT JUDGE